UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL NAGER and DEBBIE NAGER,           )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )         Case No. 19-2382-JAR
                                        )
TESLA MOTORS, INC,                      )
a/k/a Tesla, Inc.,                      )
                                        )
                    Defendant.          )

# ORDER

Plaintiffs Paul and Debbie Nager, after purchasing a Model S automobile from defendant Tesla Motors, Inc. ("Tesla"), filed this lawsuit alleging negligence, fraud, and violations of the Kansas Consumer Protection Act.[1] Defendant has filed a motion to stay the case and compel arbitration, pursuant to the terms and conditions of the Motor Vehicle Order Agreement ("the Agreement") (ECF No. 19). As set forth in more detail below, defendant's motion is retained under advisement pending expedited discovery limited to the issue of whether plaintiffs agreed to the arbitration clause in the Agreement.

---

[1] ECF No. 1-1.

Background

Plaintiffs allege that, on December 14, 2018, they purchased the Model S, which was shipped from Chicago to Kansas City. Plaintiffs further allege that they later learned, upon inspection, there was damage to the vehicle, in addition to an inadequate paint job. On July 12, 2019, defendant removed this case from the District Court of Johnson County, Kansas, and defendant's state-court motion to stay the case and compel arbitration was deemed to be filed in this court.[2] Defendant contends arbitration is mandated by the section of the Agreement titled "Agreement to Arbitrate," which reads, in relevant part:

> **Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together, "Tesla").
> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.
> If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.
> [. . . ]
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; [. . . ] stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.[3]

---

[2] ECF No. 6.

[3] ECF Nos. 1-2, 8-1.

Defendant alleges plaintiffs did not opt out of the arbitration clause, and there is no reason to invalidate the Agreement.[4] Plaintiffs oppose the motion to compel, arguing they never signed any arbitration clause and never even saw the Agreement.[5] The crux of the issue, therefore, is whether plaintiffs executed any Agreement to arbitrate. Defendant's position, as set forth in more factual detail in the analysis below, is that plaintiffs must have agreed electronically to the Agreement, either through their online order on the Tesla website or by ordering through a Tesla representative.[6] But plaintiffs contend that they never did. They contend their purchase of the vehicle was by telephone, and their only use of the Tesla website was to upload photographs of their drivers' licenses and insurance cards.[7] Therefore, they argue they never had to consent to any Agreement electronically, never saw any terms and conditions, and never agreed to the arbitration clause.

Analysis

Both parties cite to the Federal Arbitration Act ("FAA") as governing the Agreement. Where the Kansas Uniform Arbitration Act expressly exempts tort claims from its scope, the FAA "preempts conflicting state laws which exempt enforcement of arbitration agreements involving interstate commerce"[8] and "creates a body of federal

---

[4] ECF No. 1-2.

[5] ECF No. 7.

[6] ECF No. 8.

[7] ECF No. 11.

[8] *Packard v. Credit Sols. of Am., Inc.*, 42 Kan. App. 2d 382, 384, 213 P.3d 437, 440 (2009).

substantive law of arbitrability."[9] Courts in this district have recognized that the FAA preempts limitations that Kansas law might otherwise apply to the enforceability of arbitration agreements.[10]

The FAA provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[11] Federal policy favors arbitration agreements, and courts are required to read them liberally.[12] Notwithstanding this policy, arbitration is a matter of contract and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[13] When a party disputes whether there is a valid and enforceable arbitration, the presumption of arbitrability no longer applies.[14]

---

[9] *Foodbrands Supply Chain Servs., Inc. v. Terracon Inc.*, No. CIV.A. 02-2504-CM, 2003 WL 23484633, at *4 (D. Kan. Dec. 8, 2003).

[10] *Id.*; *Dagnan v. St. John's Military Sch.*, No. 16-2246-CM, 2016 WL 7386280, at *7 (D. Kan. Dec. 21, 2016) (citing *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1152 (10th Cir. 2007)).

[11] *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1116 (10th Cir. 2015) (quoting 9 U.S.C. § 2), *cert. denied sub nom. Cox Commc'ns, Inc. v. Healy*, 136 S. Ct. 801 (2016).

[12] *Guinn v. Cedarhurst Living, LLC*, No. 18-2182-DDC-KGG, 2018 WL 5281564, at *1 (D. Kan. Oct. 24, 2018) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also In re Cox*, 790 F.3d at 1116 (quoting *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010)).

[13] *Guinn*, 2018 WL 5281564, at *2; *Unified Sch. Dist. #503, Parsons, Kan. v. R.E. Smith Const. Co.*, No. 07-2423-GLR, 2008 WL 2152198, at *2 (D. Kan. May 21, 2008).

[14] *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017).

On a motion to compel arbitration under the FAA, the court should compel arbitration if it finds (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement.[15]  It is for the court to decide whether an agreement to arbitrate exists.[16]  To determine whether a party has agreed to arbitrate, the court applies state-law principles.[17]  The parties agree Kansas law governs this issue.  Under Kansas law, a contract for the sale of goods is formed "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."[18]  The parties' intentions control.[19]

The party moving to compel arbitration "bears an initial summary-judgment-like burden of establishing that it is entitled to arbitration."[20]  It must offer sufficient evidence to demonstrate an enforceable agreement to arbitrate.[21]  The burden then shifts to the party opposing arbitration to "demonstrate a genuine issue of material fact as to the making of

---

[15] 9 U.S.C. §§ 2–3.

[16] Kan. Stat. Ann. § 5-428(b).

[17] *Jacks*, 856 F.3d at 1304–05 (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)).

[18] Kan. Stat. Ann. § 84-2-204; *Netstandard Inc. v. Citrix Sys., Inc.*, No. 16-2343-CM, 2017 WL 2666168, at *2 (D. Kan. June 21, 2017).

[19] *Unified Sch. Dist. #503, Parsons, Kan.*, 2008 WL 2152198, at *2.

[20] *Id.*

[21] *Id.*

5

the agreement to arbitrate."[22] The party may point to affidavits, depositions, or exhibits to identify disputed facts.[23] The court gives plaintiffs, as the party opposing arbitration, "the benefit of all reasonable doubts and inferences that may arise."[24] If the non-moving party demonstrates a genuine issue of material fact, then "a trial on this issue is required."[25] "Parties should not have to endure years of waiting and exhaust legions of photocopiers in discovery and motions practice merely to learn *where* their dispute will be heard."[26]

The court finds that defendant, as the moving party, has failed to meet its burden to establish that the arbitration provision contained in the Agreement applies to plaintiffs' claims. Defendant filed a motion and only attached the unsigned agreement as evidence. In its reply brief, defendant offered declarations of employees, including the declaration of a senior project manager, Raymond Kim, who states that "Tesla electronically stores documentation and other information pertaining to its vehicle sales, including the date and time an order is placed."[27] He declares that plaintiffs "placed their order on December 14,

---

[22] *Id.*; *Guinn*, 2018 WL 5281564, at *2.

[23] *Unified Sch. Dist. #503, Parsons, Kan.*, 2008 WL 2152198, at *2.

[24] *Cannon v. SFM, LLC*, No. 18-2364-JWL, 2019 WL 568581, at *2 (D. Kan. Feb. 12, 2019).

[25] *Id.*; *Guinn*, 2018 WL 5281564, at *2; *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (explaining that the FAA "calls for a *summary trial*").

[26] *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues")).

[27] ECF No. 8-1.

2018, at 12:39 a.m. Central Standard Time and took delivery of the Model S on December 19, 2018."[28] Mr. Kim refers to and attaches the Motor Vehicle Order Agreement, but the agreement is again undated and unsigned.[29] In Mr. Kim's affidavit, he attests that this document is still available for plaintiffs to view through their Tesla account.

Defendant also provides the affidavit of Chris Griffith, one of its senior staff products managers. Mr. Griffith attests to the two ways that customers place vehicle orders: first is the online order-placement through the Tesla website, whereby the customer must click "Place Order" and hyperlinks to the Motor Vehicle Order Agreement and Customer Privacy Policy appear, along with the text, "By placing this order you agree to the Motor Vehicle Order Agreement and the Customer Privacy Policy."[30] The second method is to order through the Tesla representative, where the customer must access his/her Tesla account to compete additional processes required for delivery of the vehicle, including accepting the terms and conditions. According to Mr. Griffith, this requires checking boxes titled "I ACCEPT" and "SUBMIT" alongside text reading, "Please review and accept your Order Agreement. This document is attached to your order receipt email on [date]."[31] Mr. Griffith states that the Motor Vehicle Order Agreement would have appeared if plaintiffs had clicked on the hyperlink in either of the purchase processes.

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

7

Similar to Mr. Kim, Mr. Griffith attaches a copy of the Motor Vehicle Order Agreement that is undated and unsigned.[32]

Defendant's evidence is inadequate to meet its burden to demonstrate an enforceable agreement to arbitrate. Defendant has included, multiple times, a copy of its standard Motor Vehicle Order Agreement, which undeniably contains language requiring arbitration of any dispute between plaintiffs and defendant. But what is at issue in this case is not whether defendant's Agreement contains arbitration language; it is whether plaintiff ever agreed to submit to arbitration.

Defendant argues that plaintiffs electronically accepted the Agreement and that electronic signature constitutes assent to the contract.[33] Defendant has provided affidavits attesting to the how purchases are generally made, but they have not proffered any evidence that plaintiffs actually went through these processes to purchase their vehicle.[34] Defendant has not offered any business record that establishes plaintiffs clicked through and electronically accepted the Agreement, despite its assertion that the company electronically stores documents and other information pertaining to its vehicle sales. The court agrees with plaintiffs that defendant has offered what appears, for purposes of this dispute, to be

---

[32] *Id.*

[33] ECF No. 8.

[34] *See Netstandard Inc. v. Citrix Sys., Inc.*, No. 16-2343-CM, 2017 WL 2666168, at *4 (D. Kan. June 21, 2017) (noting the defendant did not have any documentation of plaintiff agreeing to the terms and conditions at issue or documentation that the notice was actually sent to the plaintiff; rather, the defendant submitted as evidence a template that went out to all who registered for its software).

"just some random document with no connection to plaintiffs or the transaction at issue in this case."[35] Plaintiffs do not dispute placing an order, which is what defendant's evidence confirms; the manner and logistics of the order appear to be the relevant factual issues in dispute.

The burden then shifts to plaintiffs to demonstrate a genuine issue of material fact. Plaintiffs have done so. Plaintiff Debbie Nager states in the surreply that she made her purchase over the phone and made her payments via e-mail and telephone.[36] She states she did not use Tesla's website before the delivery of the vehicle.[37] She alleges the first time she saw the arbitration clause was when defendant filed the instant motion.[38]

Plaintiff Paul Nager states in his affidavit that the only time he used Tesla's website was on December 13, 2018, when he uploaded photographs of plaintiffs' driver's licenses and proof of insurance.[39] That process, he states, required him to log into his account, select the document to be uploaded, select the type of document from a drop-down list, and click the "upload" button."[40] He alleges he was never asked to review any terms and conditions on the website, nor was he required to accept or submit any Agreement to terms

---

[35] ECF No. 7.

[36] ECF No. 11-1.

[37] *Id.*

[38] *Id.*

[39] ECF No. 11-2.

[40] *Id.*

9

and conditions.⁴¹ Mr. Nager states that he did not otherwise use the website and was not otherwise shown any documents with the arbitration clause.⁴² Although defendant asks the court to presume plaintiffs agreed to the arbitration clause, both Mr. and Mrs. Nager state in their affidavits that they were not made aware of the Agreement, and never had occasion to see it, until this motion was filed.⁴³

The court cannot at this juncture find that plaintiffs agreed to arbitration. Plaintiffs have demonstrated through their affidavits and exhibits that there is a genuine issue of disputed fact as to whether they ever agreed – electronically or otherwise – to arbitrate this dispute. Whether this case belongs in arbitration or litigation hinges on the factual issues that remain. It is possible that plaintiffs did not check any box or agree to any arbitration clause on the website. It is also possible that plaintiffs did agree to an online contract and electronically accepted the terms and conditions by checking "I ACCEPT" and "I SUBMIT." Plaintiffs have sufficiently shown there is a factual dispute as to the existence of the Agreement to arbitrate.⁴⁴ Without these factual findings, it is unclear whether the parties agreed to arbitrate this dispute.

---

⁴¹ *Id.*

⁴² *Id.*

⁴³ ECF Nos. 11-1, 11-2. Courts in this district have held that continuing with the contract "after receiving a writing with additional or different terms is not sufficient to establish express consent to the additional or different terms." *Netstandard Inc.*, 2017 WL 2666168, at *3.

⁴⁴ Plaintiffs argue in the alternative that their right to opt out of the arbitration clause has not yet expired and they invoke their right to opt out. Because the court finds that defendant has not met its burden on the first issue, the court does not reach the issue of whether

10
O:\ORDERS\19-2382-JAR-1.docx

Plaintiffs ask the court to deny defendant's motion outright. Courts in this district have counseled against denying arbitration outright when there is a dispute about arbitrability.[45] 9 U.S.C. § 4 provides that "[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine" the issue of "the making of the arbitration agreement."[46] Accordingly, the court will first schedule expedited discovery limited to the issue of whether plaintiffs agreed to arbitrate. If that does not resolve the issue, the court will hold an evidentiary hearing.[47] The court will reserve judgment on the motion to compel arbitration and stay proceedings until the parties have presented evidence at the hearing or trial.

IT IS THEREFORE ORDERED that, on **September 6, 2019, at 2:00 p.m.**, the court will conduct a scheduling conference in Courtroom 223 regarding the extent to which the parties will be permitted to conduct discovery limited to the execution of the Agreement.

IT IS FURTHER ORDERED that the court will conduct a follow-up status conference once discovery is complete to determine whether a "summary trial" is required or whether the parties believe that the court can resolve the issue based solely on

---

plaintiffs opted out of arbitration. This is a factual issue about which the parties may submit evidence.

[45] *Cannon v. SFM, LLC*, No. 18-2364-JWL, 2019 WL 568581, at *3 (D. Kan. Feb. 12, 2019).

[46] *Greiner v. Credit Acceptance Corp.*, No. 16-01328-EFM-TJJ, 2017 WL 586727, at *3 (D. Kan. Feb. 13, 2017).

[47] *Id.*; *Cannon*, 2019 WL 568581, at *3.

supplemental written submissions.  To the extent a trial is required, the court will explore with the parties during the status conference whether a bench trial or a jury trial is the appropriate course of action.

Dated September 3, 2019, at Kansas City, Kansas.

  s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge